ORIGINAL

LEWIS BRISBOIS BISGAARD & SMITH LLP
ARTHUR K. CUNNINGHAM, SB# 97506
E-Mail: akcatty@lbbslaw.com
650 East Hospitality Lane, Suite 600
San Bernardino, California 92408
Telephone: 909.387.1130
Facsimile: 909.387.1138

Attorneys for Defendants
CITY OF BEAUMONT and GREG FAGAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| SCOT DAVIS, et al., | CASE NO. CV 12-04990 ABC (SHx) |
|---|---|
| Plaintiffs, | **CITY OF BEAUMONT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| CITY OF BEAUMONT, et al., | Judge: Hon. Audrey B. Collins |
| Defendants. | Trial Date: None Set |

TO ALL PLAINTIFFS HEREIN THROUGH THEIR ATTORNEYS OF RECORD AND THIS HONORABLE COURT:

PLEASE TAKE NOTICE that on July 1, 2013, at 10:00 am. in Courtroom 680 located at the United States District Court, 255 East Temple Street, Los Angeles, California, defendant CITY OF BEAUMONT shall move the court for summary judgment, as further set forth below.

This Motion is brought pursuant to Fed. Rule of Civ. Proc. 56(a) and is supported by this Notice, the Motion appended below, and the Memorandum of Points and Authorities submitted herewith, the Statement of Uncontroverted Facts and supporting declaration and exhibits, the Court's own file, and such other and further evidence and argument as the Court may deem fit to consider.

DATED:                                    LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
Arthur K. Cunningham
Attorneys for Defendant, CITY OF BEAUMONT

## MEET AND CONFER COMPLIANCE

This motion is made following communications between counsel pursuant to L.R. 7-3 which took place on May 30, 2013.

DATED:   June 3, 2013                     LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
Arthur K. Cunningham
Attorneys for Defendant, CITY OF BEAUMONT

4846-1901-2884.1

2

# MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants move for summary judgment as to the following claims for relief of the First Amended Complaint as to each of the plaintiffs on the ground that they do not state a claim upon which relief may be granted as against the defendant, and there are no triable issues of fact as to same, pursuant to FRCP 56(a):

As to each and every plaintiff:

1. Claim # 4, MMBA [Gov. Code Secs. 3502, 3506]

DATED: 6/3/2013                    LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
Arthur K. Cunningham
Attorneys for Defendant, CITY OF BEAUMONT

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES

SUMMARY OF ARGUMENT ................................................................1
    1. CLAIMS FOR RELIEF ................................................................1
    2. ALLEGATIONS OF FIRST AMENDED COMPLAINT................1
        A. DAVIS ................................................................2
        B. FORD ................................................................3
        C. HARRIS ................................................................3
UNCONTROVERTED FACTS ................................................................3
    3. STANDARD FOR SUMMARY JUDGMENT ...........................7
    4. CLAIM NO. 4 – CLAIM UNDER MEYERS-MILIAS-
        BROWN ACT ................................................................8
CONCLUSION ................................................................11

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Citations**

*Abelleira v. Dist. Court of Appeal, Third District* (1941)
    17 Cal.2d 280, 292 .................................................................................. 8

*Anderson v. Liberty Lobby*
    477 U.S. 242, 252 (1986) ....................................................................... 8

*Campbell v Regents of University of California* (2005)
    35 Cal.4th 311, 321-32 ........................................................................... 8

*Celotex Corp. v. Catrett*
    477 U.S. 317, 324 (1986) ....................................................................... 7

*City of Fresno v. Superior Court* (1987)
    188 Cal.App.3d 1484, 1490 .................................................................. 8

*Coleman v. Quaker Oats Co.*,
    232 F.3d 1271, 1280-81 (9th Cir. 2000) ............................................... 9

*Edgren v. Regents of University of California* (1984)
    158 Cal.App.3d 515, 520. ...................................................................... 8

*Erickson v Pierce County*
    960 F.2d 801, 803 (9th Cir. 1992) ........................................................ 11

*Hersant v. Department of Social Services* (1997)
    57 Cal.App.4th 997, 1005) .................................................................. 11

*McDonnell Douglas v Green*, (1973)
    411 U.S. 792 ..................................................................................... 9, 10

*Morton v. Superior Court* (1970)
    9 Cal.App.3d 977, 981 ........................................................................... 8

*Sada v. Robert F. Kennedy Medical Center* (1997)
    56 Cal.App.4th 138 .......................................................................... 9, 10

*Ward v. Allstate Ins. Co.*
    964 F. Supp. 307, 310 (C.D. Cal. 1997) ............................................... 7

*Winarto v. Toshiba Am. Elecs. Components, Inc.*
    274 F.3d 1276 (9th Cir. 2001) ........................................................... 8, 9

**Federal Rules of Civil Procedure**

Fed. Rule of Civ. Proc. 56 (c) ................................................................ 10

**Government Code**

Government Code Section 3502 ............................................................. 1

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

Government Code Section 3502 .1 ...................................................…............11

Government Code Section 3506 ...................................................................1

# MEMORANDUM OF POINTS AND AUTHORITIES
# SUMMARY OF ARGUMENT

Defendants demonstrate below that plaintiffs (1) did not engage in protected First Amendment activity; (2) do not allege a claim for retaliation; (3) do not allege proper claims against the individual defendant; (4) do not allege claims of violation of their right to engage in political activity; and (5) do not allege retaliation or discrimination based on a position as an officer in a collective bargaining unit.

The complaint does not allege valid claims on these grounds against any defendant herein under any theory set forth; and defendants demonstrate that amendment would be futile.

## 1. CLAIMS FOR RELIEF

1. ~~"42 USC 1983" [retaliation/failure to promote for speech-related activities] [DISMISSED ON MOTION]~~
2. FMLA interference/retaliation (on behalf of Davis, only) [¶ 29 USC Sec. 2615]
3. ~~State Law Retaliation [Gov. Code Secs. 3302 retaliation for conducting "political activity"] [DISMISSED ON MOTION]~~
4. State Law Retaliation [Gov. Code Secs 3502, 3506 - retaliated against as member of bargaining unit]

## 2. ALLEGATIONS OF FIRST AMENDED COMPLAINT

The BPOA did an "evaluation" of Beaumont police chief Frank Coe in April 2011, following a meeting discussing the subject. In the letter, anonymous officers #3 and #7 contend that they "do not believe" or "do not think" that Chief Coe adheres to the department's Core Values, although Officer #3 "think[s] Chief Coe believes he does" [¶16 at 5: 19 – 6:1].

Officer # 7 notes that Chief Coe has "good communications skills" and states

that Coe "keeps a customer service focus [] at the expense of the Officer's" (sic) [6:5-6] and "cares more about a citizen complaint than he does about the Officer's" (sic) [6:5-7]. Officer # 7 complains about issues relating to notice for time off, briefing training, and "micro-managing" [6: 26-27].

Officer #3 complains that the Chief enforces policies but "refuses to lead by example" [7:27-28] and Officer # 7 claims that the Chief adheres to department policies "when it makes him look good", using as an example a sergeant's position for which only three applicants applied [8: 5-6].

Officers #3 and #7 were plaintiffs Davis and Harris, per the complaint. [8:13-27].

(There are no statements cited from the letter relating to officer safety, community safety, or any matters not relating simply to interdepartmental "sour grapes", and one assumes that if such material were contained in the letter, it would have been set forth in the Amended Complaint, given the four pages of single-spaced text given over to reciting its content.)

Immediately after their "Associational speech" the plaintiffs were subjected to "increasingly harsh discipline". After the letter to the City Manager, Coe "instituted what he called a zero tolerance policy for discipline" [¶ 22].

A.  **DAVIS**

Davis was subpoenaed to appear at a preliminary hearing on a criminal case on June 6, 2011 [¶ 27]. He told the subpoena clerk to ask that the DA postpone the hearing since he intended to be on FMLA leave. The clerk "erroneously failed to notify" the DA's office until June 16 [¶ 28].

On June 17, Sgt. Keyser called Davis and ordered him to go to the hearing in Murrieta although he was on FMLA leave. He went to court but was not called as a witness [¶ 29]. Davis was "notified" on July 13 that he was being demoted and suspended for (40) hours for failing to arrive on time to court while on FMLA leave. No other officer had been disciplined for such behavior and others who missed court

entirely were given a written reprimand only [¶ 30].

In a new paragraph, Davis alleges that a subsequent arbitration found in his favor and his discipline overturned [¶ 34].

### B. FORD

Ford conducted a traffic stop on August 15, 2011 (i.e., four months post-meeting/letter). The citizen complained; a sergeant spoke to the complainant. The sergeant "mishandled the investigation" and Ford was disciplined for discourtesy to the sergeant [¶ 36]. Ford was given <u>notice</u> of a 30 day suspension and was "subsequently discipline[d]". [¶ 37]. No other officer has been disciplined so harshly for similar offenses [¶ 36]. (Although the Complaint alleges that he was "<u>notified</u>" of harsh discipline, the Complaint does not allege that such harsh discipline was, in fact, imposed. The nature of the discipline is not alleged; nor is the fact that the disciplinary matter was the subject of a settlement between the City and Ford.)

### C. HARRIS

On July 5, 2011, Harris' wife dropped him off and illegal window tint was noted (the Complaint indicates that this was true) [¶ 41]. Subsequently, Harris was "given notice" that he was being demoted and suspended for 40 hours for "failing to remove the window tint on his wife's vehicle" [¶ 42]. No other officer has ever been disciplined so harshly for failing to correct a minor Vehicle Code equipment violation on "their spouse's vehicle". This was retaliatory. [¶ 43].

### UNCONTROVERTED FACTS

The uncontroverted facts, taken from the Defendant's Statement of Uncontroverted Facts, establish the following:

All Beaumont police officers below the rank of Sgt. are members of the Beaumont Police Officer's Association ("BPOA"). Neither Davis, Harris or Ford were officers of the BPOA at the time of these incidents. BPOA held a meeting in April 2011 wherein a discussion of "evaluating" Chief Coe occurred.

1  At the time of the meeting, plaintiff Davis' concerns included allegedly harsh
2  discipline, "fear of management", etc. These concerns "existed at the time of the
3  meeting".
4  After the meeting, Davis provided information included in the letter as
5  "Officer # 3." The letter was submitted to the City on or about April 20, 2011 by
6  then-BPOA president Chris Ramos. Ramos, the BPOA president who signed and
7  delivered the April 2011 letter, was promoted from corporal to sergeant AFTER the
8  letter was delivered.
9  Davis was subpoenaed to court and was contacted to comply with the
10 subpoena on or about June 16, 2011. He arrived late at court. Davis was first
11 advised of an intent to discipline him on July 28, 2011 – three months after the
12 meeting and letter.
13 Following a Skelly meeting with Chief Coe, Davis was advised of a proposed
14 discipline as follows: a 40-hour suspension to be held in abeyance for 12 months
15 and dismissed if there were no sustained complaints of misconduct of the same or
16 similar nature during that period, and that although he would be removed from your
17 assignment as a corporal, he would continue to receive pay as a corporal during that
18 12-month period.
19 Davis, as was his right, then went to arbitration concerning his discipline. The
20 award of the arbitrator was in his favor; as a result, he was returned to his position
21 and assignment. Davis did not request any back pay following the arbitration award.
22 Davis in fact did not request to return to his former detective assignment. He
23 expressed a preference for a patrol corporal assignment to a specific shift. That
24 request was honored.
25 Davis has requested a special assignment since that date, and was granted the
26 assignment but chose not to fill it.
27 Ford was hired as and still is a police officer; contrary to the allegations of the
28 FAC (para. 12) he has never been promoted, never applied for promotion, and never

applied for any special assignment.

Ford did not contribute anything that was included in the letter to the City "evaluating" Chief Coe.

According to Ford, the concerns expressed as to why the review was to be done involved "past incidents" of discipline. Contrary to the allegations of the FAC, Ford had in fact been disciplined prior to the April 2011 meeting in a written reprimand and for damage to a vehicle. After the April 2011 meeting, Ford was first notified of an intent to discipline by a notice dated September 27, 2011 –five months after the April 2011 POA meeting. He had not been disciplined in the preceding months.

Following a Skelly meeting with Chief Coe, Ford received a letter dated October 31, 2011 proposing a settlement of his discipline grievance, under the terms of which his discipline would be reduced to 12 hours suspension, with the suspension held in abeyance for 12 months. He was not actually suspended without pay, and never had to serve any suspension.

The traffic stop at issue in a part of Ford's discipline involved Ford having told a citizen that he could have his car towed for a registration violation. Ford ultimately learned that he could not, in fact, do so.

Ford and the City settled the discipline matter by way of a written agreement. Ford specifically agreed that he was waiving any further appeal of the disciplinary matter as part of the settlement agreement.

Harris is a corporal with Beaumont PD. However, at the present time, Harris is serving as an "acting sergeant" while another sergeant is on leave, receiving sergeant's pay.

BPOA held a meeting in April 2011 wherein a discussion of "evaluating" Chief Coe occurred. After the meeting, Harris provided information included in the letter as "Officer # 7." The letter was sent to the City on or about April 20, 2011. After the meeting and letter, in about May 2011, Harris was assigned to a detective

position.

Harris received a memo dated June 20 from the Department issued to all City Hall and Police Department employees directing all City Hall and Police Department employees to ensure that their vehicles were in compliance with Vehicle Code window tint requirements. The memo required that all employees bring their vehicles into compliance by June 30, 2011.

Following receipt of the memo, on July 5, 2011, Harris was picked up at the Department by his wife, driving a vehicle of which he was a registered owner, which had an illegal tint. At the time Harris understood that his vehicle was subject to the Chief's memo; he had been required to remove tint from other vehicles in the past; and he did NOT think that the vehicle code provisions concerning tint did not apply to the truck.

Harris was first advised of an intent to discipline him on July 25, 2011. The discipline was based on his failure to comply with the June 20 memo.

Following a Skelly meeting with Chief Coe, Harris was advised of a proposed discipline for failure to adhere to a department directive, including a reduction in rank, but not in pay, for a 6-12 month period.

Harris appealed the discipline, and then negotiated a settlement of the discipline matter. The settlement required a 40 hour suspension without pay. As a result of the settlement, he was returned to his corporal rank and assignment as of February 2, 2012.

As part of the settlement of the discipline matter, Harris agreed that this settlement was a "Final disposition and resolution, plaintiff agrees no further appeal"; this was "a final resolution of [Harris'] appeal of the disciplinary process"

In each instance wherein one of the plaintiffs was disciplined, Chief Coe recommended a lesser degree of discipline than was initially proposed. The disciplinary actions were believed necessary to maintain the integrity of the department, promote good conduct, and to correct perceived errors in judgment.

Chief Coe did not retaliate against any plaintiff; in fact, he promoted Harris to detective, and then to acting sergeant, after the April 2011 meeting and letter; he approved Davis' post-Arbitration choice of assignment and shift; he promoted the BPOA president, Chris Ramos, from corporal to sergeant after the April 2011 POA meeting and letter.

Since the April 2011 meeting/letter, the department created two additional Sergeant positions and tested in-house. Neither Davis nor Ford competed, but two POA members were promoted from that process; and Harris, who did not promote in that process, has been appointed to an Acting Sergeant position.

The City of Beaumont's grievance process for discipline matters calls for the aggrieved employee to first participate in mediation; then binding arbitration if mediation does not resolve the dispute. Only Cpl. Davis actually carried through the process to its conclusion.

### 3. STANDARD FOR SUMMARY JUDGMENT

A party moving for summary judgment has the initial burden to establish there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Ward v. Allstate Ins. Co.*, 964 F. Supp. 307, 310 (C.D. Cal. 1997). The moving party is not required to disprove matters upon which the non-moving party will have the burden of proof at trial; indeed, the moving party need not produce any evidence at all on those issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party's burden is met simply by "'showing'--that is, pointing out to the District Court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

The opposing party's burden is to show a triable issue of fact as to matters upon which he will bear the burden of proof at trial. "A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. The mere existence of a scintilla of evidence does not satisfy this standard; rather, the plaintiff can meet it

only with such admissible evidence that a reasonable trier of fact could return a verdict in his or her favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

4. **Claim No. 4 - Claim under Meyers-Milias-Brown Act**

Plaintiffs all claim they were retaliated against because they were members of the BPOA. These claims fail.

Of course, the sine qua non of any claim for retaliation is, first and foremost, adverse employment action. *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276 (9th Cir. 2001). Here, however, plaintiffs Ford and Harris called a halt to their appeals of discipline by compromising the disciplinary grievances, and reaching a written settlement on those issues. Thus, no actionable adverse action is alleged by plaintiffs Harris and Ford upon which a claim under this section could be based[1].

Turning to the process for adjudicating this question, we note the following brief recap of the applicable standard:

"[T]he burden of production shifts to the defendant to articulate a legitimate,

---

[1] Alternatively, plaintiffs' Ford and Harris' settlements of the discipline grievances short of completing the process bar their claims due to failure to exhaust administrative remedies.
It has long been the rule in California that a litigant must exhaust all available administrative remedies before resorting to the courts for relief. (*Abelleira v. Dist. Court of Appeal, Third District* (1941) 17 Cal.2d 280, 292.) The exhaustion requirement is considered a condition of jurisdiction and, therefore, a necessary prerequisite to obtaining any judicial relief. (*Campbell v Regents of University of California* (2005) 35 Cal.4th 311, 321-322; *Morton v. Superior Court* (1970) 9 Cal.App.3d 977, 981 ["[I]t is settled that the exhaustion of an administrative remedy, where one is available, is a condition precedent to obtaining judicial relief, and that 'a court violating the rule acts in excess of jurisdiction.' [Citations.]"]; *City of Fresno v. Superior Court* (1987) 188 Cal.App.3d 1484, 1490 ["[F]ailure to exhaust [an] administrative remedy is a jurisdictional, not a procedural defect"].) The exhaustion requirement is not satisfied merely by filing an administrative grievance, but the grievance must be completed. "It is well settled that judicial intervention is premature until the administrative agency has rendered a final decision on the merits." (*Edgren v. Regents of University of California* (1984) 158 Cal.App.3d 515, 520.) Therefore, an employee must first file and complete any internal grievance process before proceeding to court lest the court lack jurisdiction.

---

1  [non-discriminatory and] non-retaliatory explanation for the adverse employment
2  action. If the employer rebuts the inference of discrimination and/or retaliation, the
3  burden of production shifts back to the plaintiff to show that the defendant's
4  explanation is merely a pretext for impermissible discrimination or retaliation.
5  Pretext may be shown either (1) directly by persuading the jury that a discriminatory
6  motive more likely than not motivated the employer or (2) indirectly by showing
7  that the employer's proffered explanation is unworthy of credence." *Winarto v.*
8  *Toshiba Am. Elecs. Components, Inc.,* 274 F.3d 1276, 1284 (9th Cir. 2001)
9  (citations and quotations omitted).

11  **START IN HERE WITH SOMETHING....** in that no *prima facie* case of
12  retaliation has been made; and even were a prima facie case possible, summary
13  judgment should still be granted on this claim, under the *McDonnell Douglas*
14  burden shifting framework.
15      In deciding a motion for summary adjudication of a retaliation claim, the
16  Court should apply the burden-shifting test from *McDonnell Douglas v Green*,
17  (1973) 411 U.S. 792. That test has been repeatedly applied to statute-based
18  discrimination and retaliation cases arising in the employment context in California
19  both in state and federal courts. *Sada v. Robert F. Kennedy Medical Center* (1997)
20  56 Cal.App.4th 138; *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1280-81 (9th Cir.
21  2000). That test, as applied in employment discrimination and retaliation cases, is
22  equally applicable here, where statutory retaliation under the MMBA is the claim
23  bruited by plaintiffs.
24      In summary judgment proceedings, the *McDonnell Douglas* test applies as
25  follows:
26      "'In such pretrial [motion] proceedings, the trial court will be called
27      upon to decide if the plaintiff has met his or her burden of establishing a
28      prima facie case of unlawful discrimination. If the employer presents

admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing. In short, by applying *McDonnell Douglas*'s shifting burdens of production in the context of a motion for summary judgment, "the judge [will] determine whether the litigants have created an issue of fact to be decided by the jury." ' ... Thus, "'[a]lthough the burden of proof in a [discrimination] action claiming an unjustifiable [termination] ultimately rests with the plaintiff ... , in the case of a motion for summary judgment or summary issue adjudication, the burden rests with the moving party to negate the plaintiff's right to prevail on a particular issue. ... In other words, the burden is reversed in the case of a summary issue adjudication or summary judgment motion. ..." ' " (*Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 150–151, citations omitted.)

"The burden of persuasion remains with the plaintiff even in the face of evidence that the employer's proffered reasons are pretextual: 'The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct." ... In other words, "[i]t is not enough ... to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." ...' ... Nevertheless, evidence that the employer's proffered reasons are pretextual is significant: 'Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.' " (citations omitted].)

> "The [employee] cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. ... Rather, the [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," ... and hence infer "that the employer did not act for the [asserted] non-discriminatory reasons." ..." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005).

**Lack of Temporal Nexus.** For example, in Erickson v Pierce County, 960 F.2d 801, 803 (9th Cir. 1992) the 9th Circuit affirmed the trial court's judgment notwithstanding the verdict in plaintiff's favor; finding no retaliation where there was a three month gap between the alleged first amendment exercise and an adverse action. Here the allegedly retaliatory "notifications" of discipline occurred months after the April letter.

**Lack of Adverse Action.** Harris and Ford settled their disciplinary matters and waived further appeal(s). Thus, no adverse action occurred as to these plaintiffs.

**Lack of Retaliatory Animus.** The allegation "on information and belief" that Coe was angry about the letter is directly contradicted by the allegations of the complaint itself, wherein it is alleged <u>by the plaintiffs themselves</u> that Chief Coe told Davis that he was not concerned about Davis' critique of him, and that Davis could "put it in the newspaper for all he cared" [¶ 24]. Chief Coe promoted Harris to detective AFTER the meeting/letter; and promoted him to acting sergeant after the meeting/letter, and even after the lawsuit was filed!

## CONCLUSION

There is no basis for a claim for relief on the challenged claim for violation of Gov. Code Sec. 3502.1 on the part of any of the three plaintiffs herein.

Upon the grounds set forth in this motion, the defendants request that the motion be granted and the fourth claim for relief be dismissed. The sole remaining plaintiff and claim for trial would be the claim of plaintiff Davis for violation of FMLA.

DATED: June 3, 2013          LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
Arthur K. Cunningham
Attorneys for Defendant,
CITY OF BEAUMONT

# FEDERAL COURT PROOF OF SERVICE

Davis v City of Beaumont - File No. 25401.12

STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 650 East Hospitality Lane, Suite 600, San Bernardino, CA 92408. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On 6-3-13, I served the following document(s): CITY OF BEAUMONT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

Michael A. McGill
LACKIE DAMMIER & McGILL APC
367 North Second Street
Upland, California 91786
909-985-4003
909-985-3299 (facsimile)
**Attorneys for Plaintiffs
SCOT DAVIS, JEREMY HARRIS
and BRIAN FORD**

The documents were served by the following means:

☒ (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and I deposited the sealed envelope or package with the U.S. Postal Service, with the postage fully prepaid.

I declare under penalty of perjury under the laws of the State of CALIFORNIA that the foregoing is true and correct.

Executed on 6-3-13, at San Bernardino, California.

Sharon Denise Moore

4846-1901-2884.1

CITY'S MOTION FOR PARTIAL SUMMARY JUDGMENT