ORIGINAL

1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   ARTHUR K. CUNNINGHAM, SB# 97506
2    E-Mail: akcatty@lbbslaw.com
   650 East Hospitality Lane, Suite 600
3  San Bernardino, California 92408
   Telephone: 909.387.1130
4  Facsimile: 909.387.1138

5  Attorneys for Defendant
   CITY OF BEAUMONT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| SCOT DAVIS, et al., | CASE NO. CV 12-04990 ABC (SHx) |
|---|---|
| Plaintiffs, | **STATEMENT OF UNCONTROVERTED FACTS SUBMITTED IN SUPPORT OF DEFENDANT CITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| CITY OF BEAUMONT, et al., | |
| Defendants. | Trial Date:   None Set |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

Defendant, CITY OF BEAUMONT, submits its Statement of Uncontroverted Facts in Support of City's Motion for Partial Summary Judgment as follows. The referenced Exhibits are concurrently filed.

| | SEPARATE STATEMENT OF UNDISPUTED FACTS | |
|---|---|---|
| 1 | | |
| 2 | **Moving Party's Uncontroverted** | **Opposing Party's Response and** |
| 3 | **Facts and Supporting Evidence:** | **Supporting Evidence:** |
| 4 | | |
| 5-9 | 1. All Beaumont police officers below the rank of Sgt. are members of the Beaumont Police Officer's Association ("BPOA") [Ex. 1, Deposition of Davis, 9:18-20] | |
| 10-13 | 2. Neither Davis, Harris or Ford were officers of the BPOA at the time of these incidents. [Ex.1, Deposition of Davis,11:25-12:6] | |
| 14-18 | 3. BPOA held a meeting in April 2011 wherein a discussion of "evaluating" Chief Coe occurred. [First Amended Complaint ("FAC"), para. 14-16] | |
| 19-25 | 4. At the time of the meeting, plaintiff Davis' concerns included allegedly harsh discipline, "fear of management", etc. These concerns "existed at the time of the meeting" [Ex. 1, Deposition of Davis, 22:4 – 24:2; 24:14-18] | |

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

| Moving Party's Uncontroverted Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 5. After the meeting, Davis provided information included in the letter as "Officer # 3." [Ex. 1, Deposition of Davis, 15:8-18]. | |
| 6. The letter was submitted to the City on or about April 20, 2011 by then-BPOA president Chris Ramos. [Ex. 1, Depo of Davis, 20:18-23; FAC, para. 15.] | |
| 7. Ramos, the BPOA president who signed and delivered the April 2011 letter, was promoted from corporal to sergeant AFTER the letter was delivered. [Ex. 1, Davis deposition, 49:17 – 50:1] | |
| 8. Davis was subpoenaed to court and was contacted to comply with the subpoena on or about June 16, 2011. He arrived late at court. [Ex. 1, Deposition of Davis, 31:21 – 32:5] | |

| Moving Party's Uncontroverted Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 9. Davis was first advised of an intent to discipline him on July 28, 2011 - three months after the POA meeting and letter. [Ex. 1, Deposition of Davis, 34: 1-8, docs. CITY DAVIS 0010-14] | |
| 10. Following a Skelly meeting with Chief Coe, Davis was advised of a proposed discipline as follows: discipline as follows: a 40-hour suspension to be held in abeyance for 12 months and dismissed if there were no sustained complaints of misconduct of the same or similar nature during that period, and that although he would be removed from your assignment as a corporal, he would continue to receive pay as a corporal during that 12-month period [Ex. 1, Deposition of Davis, 34:14 – 36:8; docs. CITY DAVIS 0014-15] | |

| Moving Party's Uncontroverted Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 11. Davis, as was his right, then went to arbitration concerning his discipline. The award of the arbitrator was in his favor; as a result, he was returned to his position and assignment. [Ex. 1, Deposition of Davis, 37:8 – 38:8, doc. 19] | |
| 12. Davis did not request any back pay following the arbitration award. [Ex. 1, Deposition of Davis, 37:8 – 38:8] | |
| 13. Davis in fact did not request to return to his former detective assignment. He expressed a preference for a patrol corporal assignment to a specific shift. That request was honored. [Ex. 1, deposition of Davis, 38:23 – 39:22; docs CITY DAVIS 0020-21]. | |
| 14. Davis has requested a special assignment since that date, and was granted the assignment but chose not to fill it. [Ex. 1, deposition of Davis, 41:11 – 42:21] | |

| Moving Party's Uncontroverted Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 15. Ford was hired as and still is a police officer; contrary to the allegations of the FAC (para. 12) he has never been promoted, never applied for promotion, and never applied for any special assignment [Ex. 2, Deposition of Ford, 9:16 – 10:20] | |
| 16. Ford did not contribute anything that was included in the letter to the City "evaluating" Chief Coe. [Ex. 2, Deposition of Ford, 13:19 – 14:1] | |
| 17. According to Ford, the concerns expressed as to why the review was to be done involved "past incidents" of discipline. [Ex. 2, Deposition of Ford, 12:22 – 13:2] | |

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

| Moving Party's Uncontroverted Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 18. Contrary to the allegations of the FAC, Ford had in fact been disciplined prior to the April 2011 meeting in a written reprimand [Ex. 2, Deposition of Ford, 22:2 – 12], and for damage to a vehicle [Ex. 2, Deposition of Ford, 24:13 –24] | |
| 19. After the April 2011 meeting, Ford was first notified of an intent to discipline by a notice dated September 27, 2011. He had not been disciplined in the preceding four months  [Ex. 2, Deposition of Ford, 24:25 – 25:16; 34:16-25; doc. CITY FORD 0032-37] | |

| Moving Party's Uncontroverted Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 20. Following a Skelly meeting with Chief Coe, Ford received a letter dated October 31, 2011 proposing a settlement of his discipline grievance, under the terms of which his discipline would be reduced to 12 hours suspension, with the suspension held in abeyance for 12 months. He was not actually suspended without pay, and never had to serve any suspension [Ex. 2, Deposition of Ford, 35:16-21; 38:3-5; 42:6-8; doc. CITY FORD 0038]. | |
| 21. The traffic stop at issue in a part of Ford's discipline involved Ford having told a citizen that he could have his car towed for a registration violation. Ford ultimately learned that he could not, in fact, do so. [Ex. 2, Deposition of Ford, 42:20 – 43:11] | |

| | **Moving Party's Uncontroverted Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|---|
| | 22. Ford and the City settled the discipline matter by way of a written agreement. [Ex. 2, Deposition of Ford, 36:5 – 37:6; 37:12 – 17; doc. CITY FORD 0039-40#]. | |
| | 23. Ford specifically agreed that he was waiving any further appeal of the disciplinary matter as part of the settlement agreement. [Ex. 2, Deposition of Ford, 39:23 – 40:5; doc. CITY FORD 0040. | |
| | 24. Harris is a corporal with Beaumont PD. [FAC, para. 13] | |
| | 25. However, at the present time, Harris is serving as an "acting sergeant" while another sergeant is on leave, receiving sergeant's pay. [Ex. 3, Deposition of Harris, 42:3 – 24] | |
| | 26. BPOA held a meeting in April 2011 wherein a discussion of "evaluating" Chief Coe occurred. [Ex. 3, Deposition of Harris, 13:22 – 14:1] | |

4843-6551-9636.1

9

CITY'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PARTIAL MSJ

| Moving Party's Uncontroverted Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 27. After the meeting, Harris provided information included in the letter as "Officer #7." [Ex. 3, Deposition of Harris, 21:21 – 22:8]. | |
| 28. The letter was sent to the City on or about April 20, 2011. [FAC, para. 15]. | |
| 29. After the meeting and letter, in about May 2011, Harris was assigned to a detective position. [Ex. 3, Deposition of Harris, 23:17 – 24:17] | |
| 30. Harris received a memo dated June 20 from the Department issued to all City Hall and Police Department employees directing all City Hall and Police Department employees to ensure that their vehicles were in compliance with Vehicle Code window tint requirements. [Ex. 3, Deposition of Harris, 26:20 – 28:9; doc CITY HARRIS 005-06.] | |

| Moving Party's Uncontroverted Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 31. The memo required that all employees bring their vehicles into compliance by June 30, 2011 [Ex. 3, Deposition of Harris, 26:20 – 28:9; doc CITY HARRIS 005-06.] | |
| 32. Following receipt of the memo, on July 5, 2011, Harris was picked up at the Department by his wife, driving a vehicle of which he was a registered owner, which had an illegal tint. [Ex. 3, Deposition of Harris, 28:21 -29:10 doc. CITY HARRIS 0001] | |
| 33. At the time Harris understood that his vehicle was subject to the Chief's memo; he had been required to remove tint from other vehicles in the past; and he did NOT think that the vehicle code provisions concerning tint did not apply to the truck [Ex. 3, Deposition of Harris, 29:17-19; 30:15-25; 32:6-11] | |

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

| Moving Party's Uncontroverted Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 34.     Davis was first advised of an intent to discipline him on July 25, 2011. [Ex. 3, Deposition of Harris, 32:16 – 33:5, docs CITY HARRIS 007-010]. | |
| 35.     The discipline was based on his failure to comply with the June 20 memo. [Ex. 3, Deposition of Harris, 32:16 – 33:5, docs CITY HARRIS 007-010]. | |
| 36.     Following a Skelly meeting with Chief Coe, he was advised of a proposed discipline for failure to adhear to a department directive, including a reduction in rank, but not in pay, for a 6-12 month period [Ex. 3, Deposition of Harris, 33: 9 – 35:14 docs CITY HARRIS 0025-26] | |

| Moving Party's Uncontroverted Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 37. Harris appealed the discipline, and then negotiated a settlement of the discipline matter. The settlement required a 40 hour suspension without pay. As a result of the settlement, he was returned to his corporal rank and assignment as of February 2, 2012. [Ex. 3 Deposition of Harris, 36:6 – 37:18; doc. CITY HARRIS 0027-28] | |
| 38. As part of the settlement of the discipline matter, Harris agreed that this settlement was a "Final disposition and resolution, plaintiff agrees no further appeal"; this was "a final resolution of [Harris'] appeal of the disciplinary process" [Ex. 3, Deposition of Harris, 37:19 – 24; doc. CITY HARRIS 28] | |

| Moving Party's Uncontroverted Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 39. In each instance wherein one of the plaintiffs was disciplined, Chief Coe recommended a lesser degree of discipline than was initially proposed. The disciplinary actions were believed necessary to maintain the integrity of the department, promote good conduct, and to correct perceived errors in judgment. [Coe Declaration, at paras. 3 and 4]. | |
| 40. Chief Coe did not retaliate against any plaintiff; in fact, he promoted Harris to detective, and then to acting sergeant, after the April 2011 meeting and letter; he approved Davis' post-Arbitration choice of assignment and shift; he promoted the BPOA president, Chris Ramos, from corporal to sergeant after the April 2011 POA meeting and letter. [Coe Declaration, at paras. 3 and 4]. | |

| | |
|---|---|
| 41. Since the April 2011 meeting/letter, the department created two additional Sergeant positions and tested in-house. Neither Davis nor Ford competed, but two POA members were promoted from that process; and Harris, who did not promote in that process, has been appointed to an Acting Sergeant position. | |
| 42. The City of Beaumont's grievance process for discipline matters calls for the aggrieved employee to first participate in mediation; then binding arbitration if mediation does not resolve the dispute. Only Cpl. Davis actually carried through the process to its conclusion. [Coe Declaration, at para. 5]. | |

DATED: _____, 2013    ARTHUR K. CUNNINGHAM
                                      LEWIS BRISBOIS BISGAARD & SMITH LLP

                                      By: _____
                                          Arthur K. Cunningham
                                          Attorneys for Defendant CITY OF
                                          BEAUMONT

# FEDERAL COURT PROOF OF SERVICE

Davis v City of Beaumont - File No. 25401.12

STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 650 East Hospitality Lane, Suite 600, San Bernardino, CA 92408. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On June 3, 2013, I served the following document(s): **STATEMENT OF UNCONTROVERTED FACTS SUBMITTED IN SUPPORT OF DEFENDANT CITY'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

Michael A. McGill
LACKIE DAMMIER & McGILL APC
367 North Second Street
Upland, California 91786
909-985-4003
909-985-3299 (facsimile)
**Attorneys for Plaintiffs SCOT DAVIS, JEREMY HARRIS and BRIAN FORD**

The documents were served by the following means:

☒ (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and I deposited the sealed envelope or package with the U.S. Postal Service, with the postage fully prepaid.

☒ (BY COURT'S CM/ECF SYSTEM) Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the State of CALIFORNIA that the foregoing is true and correct.

Executed on June 3, 2013, at San Bernardino, California.

Sharon D. Moore

4843-6551-9636.1

CITY'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PARTIAL MSJ