1  Christopher L. Gaspard, SBN 275763
2  chris@GCWHlaw.com
   Brandi L. Harper, SBN 264672
3  Brandi@GCWHlaw.com
4  GASPARD CASTILLO WINTER HARPER APC
   3333 Concours Street Suite 4100
5  Ontario, California  91764
6  Telephone: (909) 466-5600
   Facsimile:  (909) 466-5610
7

8  Attorneys for Plaintiffs,
9  SCOT DAVIS; BRIAN FORD;
   JEREMY HARRIS
10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14  SCOT DAVIS; BRIAN FORD;           Case No. CV12-04990 ABC (SHx)
15  JEREMY HARRIS,
                                      *Assigned for all purposes to:*
16              Plaintiff's,          *Honorable Audrey B. Collins*

17                                    **PLAINTIFF'S SEPARATE
18        vs.                         STATEMENT OF UNDISPUTED
                                      FACTS**
19  CITY OF BEAUMONT, a municipal
20  corporation; FRANK COE, individually
    and as Chief of Police of the Beaumont
21  Police Department; and DOES 1
    THROUGH 10 inclusive,
22
23              Defendants.
24

25  / / /

26  / / /

27        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

28

                                   1

           PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

Plaintiffs, SCOT DAVIS, JEREMY HARRIS AND BRIAN FORD submit their Statement of Disputes Facts in Opposition to the City's Motion for Partial Summary Judgment as follows:

### SEPARATE STATEMENT OF UNDISPUTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 1.     All Beaumont police officers below the rank of Sgt. are members of the  Beaumont Police Officer's Association ("BPOA") [Ex. 1, Deposition of Davis, 9:18-20] | Undisputed. |
| 2.     Neither Davis, Harris or Ford were officers of the BPOA at the time of these incidents. [Ex.1, Deposition of Davis,11:25-12:6] | Undisputed. |
| 3.     BPOA held a meeting in April 2011 wherein a discussion of "evaluating" Chief Coe occurred. [First Amended Complaint ("FAC"), para. 14-16] | Undisputed. |
| 4.     At the time of the meeting, plaintiff Davis' concerns included allegedly harsh discipline, "fear of management", etc. These concerns "existed at the time of the meeting" | Disputed.  Davis had various concerns relating to Chief Coe including concerns about his decision making which necessarily concerned officer safety. Declaration of Scot Davis ¶3, 4 |

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A Professional Corporation

| | |
|---|---|
| [Ex. 1, Deposition of Davis, 22:4 – 24:2; 24:14-18] | |
| 5.      After the meeting, Davis provided information included in the letter as "Officer # 3." [Ex. 1, Deposition of Davis, 15:8-18]. | Undisputed. |
| 6.      The letter was submitted to the City on or about April 20, 2011 by then-BPOA president Chris Ramos. [Ex. 1, Depo of Davis, 20:18-23; FAC, para. 15.] | Undisputed. |
| 7.      Ramos, the BPOA president who signed and delivered the April 2011 letter, was promoted from corporal to sergeant AFTER the letter was delivered. [Ex. 1, Davis deposition, 49:17 – 50:1] | Undisputed. |
| 8.      Davis was subpoenaed to court and was contacted to comply with the subpoena on or about June 16, 2011. He arrived late at court.  [Ex. 1, Deposition of Davis, 31:21 – 32:5] | Disputed. Davis had been subpoenaed to court but had followed department policy regarding unavailability for the hearing due to FMLA leave.  Because he was on FMLA Leave he should not have attended the hearing.<br>Declaration of Scot Davis ¶10-14 |
| 9.      Davis was first advised of an | Undisputed |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

| | |
|---|---|
| intent to discipline him on July 28, 2011 - three months after the POA meeting and letter. [Ex. 1, Deposition of Davis, 34: 1-8, docs. CITY DAVIS 0010-15] | |
| 10.    Following a Skelly meeting with Chief Coe, Davis was advised of a proposed discipline as follows: discipline as follows:  a 40-hour suspension to be held in abeyance for 12 months and dismissed if there were no sustained complaints of misconduct of the same or similar nature during that period, and that although he would be removed from your assignment as a corporal, he would continue to receive pay as a corporal during that 12-month period [Ex. 1, Deposition of Davis, 34:14 – 36:8; docs. CITY DAVIS 0014-15] | Undisputed |
| 11.    Davis, as was his right, then went to arbitration concerning his discipline. The award of the arbitrator was in his favor; as a result, he was returned to his position and assignment. [Ex. 1, Deposition | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

| | |
|---|---|
| of Davis, 37:8 – 38:8, doc. 19] | |
| 12.    Davis did not request any back pay following the arbitration award. [Ex. 1, Deposition of Davis, 37:8 – 38:8] | Undisputed |
| 13.    Davis in fact did not request to return to his former detective assignment. He expressed a preference for a patrol corporal assignment to a specific shift. That request was honored. [Ex. 1, deposition of Davis, 38:23 – 39:22; docs CITY DAVIS 0020-21]. | Disputed.  Davis did not request to be put back in his Detective position because he did not want to work under Commander Fagan as he feared if he did so he would be subject to further retaliation. See Declaration of Scot Davis ¶21 |
| 14.    Davis has requested a special assignment since that date, and was granted the assignment but chose not to fill it. [Ex. 1, deposition of Davis, 41:11 – 42:21] | Undisputed |
| 15.    Ford was hired as and still is a police officer; contrary to the allegations of the FAC (para. 12) he has never been promoted, never applied for promotion, and never applied for any special assignment [Ex. 2, Deposition of Ford, 9:16 – 10:20] | Undisputed |

5

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

| | |
|---|---|
| 16.    Ford did not contribute anything that was included in the letter to the City "evaluating" Chief Coe. [Ex. 2, Deposition of Ford, 13:19 – 14:1] | Undisputed |
| 17.    According to Ford, the concerns expressed as to why the review was to be done involved "past incidents" of discipline. [Ex. 2, Deposition of Ford, 12:22 – 13:2] | Disputed.  Ford raised issues relating to the Chief's job performance and decision making. See Declaration of Brian Ford ¶4 |
| 18.    Contrary to the allegations of the FAC, Ford had in fact been disciplined prior to the April 2011 meeting in a written reprimand [Ex. 2, Deposition of Ford, 22:2 – 12], and for damage to a vehicle [Ex. 2, Deposition of Ford, 24:13 –24] | Undisputed |
| 19.    After the April 2011 meeting, Ford was first notified of an intent to discipline by a notice dated September 27, 2011. He had not been disciplined in the preceding four months  [Ex. 2, Deposition of Ford, 24:25 – 25:16; 34:16-25; doc. CITY FORD 0032-37] | Undisputed |
| 20.    Following a Skelly meeting | Undisputed |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| with Chief Coe, Ford received a letter dated October 31, 2011 proposing a settlement of his discipline grievance, under the terms of which his discipline would be reduced to 12 hours suspension, with the suspension held in abeyance for 12 months. He was not actually suspended without pay, and never had to serve any suspension  [Ex. 2, Deposition of Ford, 35:16-21; 38:3-5; 42:6-8; doc. CITY FORD 0038]. | |
| 21.    The traffic stop at issue in a part of Ford's discipline involved Ford having told a citizen that he could have his car towed for a registration violation. Ford ultimately learned that he could not, in fact, do so. [Ex. 2, Deposition of Ford, 42:20 – 43:11] | Undisputed |
| 22.    Ford and the City settled the discipline matter by way of a written agreement. [Ex. 2, Deposition of Ford, 36:5 – 37:6; 37:12 – 17; doc. CITY FORD 0039-40#]. | Undisputed |
| 23.    Ford specifically agreed that | Disputed.  Ford only agreed, as did the City, |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

| | |
|---|---|
| he was waiving any further appeal of the disciplinary matter as part of the settlement agreement. [Ex. 2, Deposition of Ford, 39:23 – 40:5; doc. CITY FORD 0040. | that the settlement would prevent Ford from any further administrative appeal of the discipline.<br>Declaration of Brian Ford ¶ 11 |
| 24.    Harris is a corporal with Beaumont PD. [FAC, para. 13] | Undisputed |
| 25.    However, at the present time, Harris is serving as an "acting sergeant" while another sergeant is on leave, receiving sergeant's pay. [Ex. 3, Deposition of Harris, 42:3 – 24] | Undisputed |
| 26.    BPOA held a meeting in April 2011 wherein a discussion of "evaluating" Chief Coe occurred. [Ex. 3, Deposition of Harris, 13:22 – 14:1] | Undisputed |
| 27.    After the meeting, Harris provided information included in the letter as "Officer #7." [Ex. 3, Deposition of Harris, 21:21 – 22:8]. | Undisputed |
| 28.    The letter was sent to the City | Undisputed |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

| | |
|---|---|
| on or about April 20, 2011. [FAC, para. 15]. | |
| 29.   After the meeting and letter, in about May 2011, Harris was assigned to a detective position. [Ex. 3, Deposition of Harris, 23:17 – 24:17] | Undisputed |
| 30.   Harris received a memo dated June 20 from the Department issued to all City Hall and Police Department employees directing all City Hall and Police Department employees to ensure that their vehicles were in compliance with Vehicle Code window tint requirements.  [Ex. 3, Deposition of Harris, 26:20 – 28:9; doc CITY HARRIS 005-06.] | Undisputed |
| 31.   The memo required that all employees bring their vehicles into compliance by June 30, 2011 [Ex. 3, Deposition of Harris, 26:20 – 28:9; doc CITY HARRIS 005-06.] | Undisputed. |
| 32.   Following receipt of the | Disputed.  Harris was dropped off at the |

9

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| memo, on July 5, 2011, Harris was picked up at the Department by his wife, driving a vehicle of which he was a registered owner, which had an illegal tint.  [Ex. 3, Deposition of Harris, 28:21 -29:10 doc. CITY HARRIS 0001] | station by his wife in a  vehicle which she was the primary driver of that had window tint.<br>Declaration of Jeremy Harris ¶7-8 |
| 33.    At the time Harris understood that his vehicle was subject to the Chief's memo; he had been required to remove tint from other vehicles in the past; and he did NOT think that the vehicle code provisions concerning tint did not apply to the truck [Ex. 3, Deposition of Harris, 29:17-19; 30:15-25; 32:6-11] | Disputed.  Harris believed that he had complied with the memorandum as he has removed the window tint from his vehicle. He did not belive at the time that he needed to remove the window tint from his wife's vehicle in order to comply with the orders in the memo.<br>Declaration of Jeremy Harris ¶8 |
| 34.    Davis was first advised of an intent to discipline him on July 25, 2011. [Ex. 3, Deposition of Harris, 32:16 – 33:5, docs CITY HARRIS 007-010]. | Disputed.  Davis was not first advised of an intent to discipline him on July 25, 2011. |
| 35.    The discipline was based on his | Disputed.  The discipline was based on |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| failure to comply with the June 20 memo. [Ex. 3, Deposition of Harris, 32:16 – 33:5, docs CITY HARRIS 007-010]. | Harris' failure to remove the window tint from his wife's vehicle.<br>Declaration of Jeremy Harris ¶9 |
| 36.    Following a Skelly meeting with Chief Coe, he was advised of a proposed discipline for failure to adhear to a department directive, including a reduction in rank, but not in pay, for a 6-12 month period  [Ex. 3, Deposition of Harris, 33: 9 – 35:14 docs CITY HARRIS 0025-26] | Undisputed |
| 37.    Harris appealed the discipline, and then negotiated a settlement of the discipline matter. The settlement required a 40 hour suspension without pay. As a result of the settlement, he was returned to his corporal rank and assignment as of February 2, 2012.  [Ex. 3 Deposition of Harris, 36:6 – 37:18; doc. CITY HARRIS 0027-28] | Undisputed |
| 38.    As part of the settlement of the | Disputed.  Harris only agreed not to appeal |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

| | |
|---|---|
| discipline matter, Harris agreed that this settlement was a "Final disposition and resolution, plaintiff agrees no further appeal"; this was "a final resolution of [Harris'] appeal of the disciplinary process" [Ex. 3, Deposition of Harris, 37:19 – 24; doc. CITY HARRIS 28] | his discipline further through the administrative process.  He in no way waived his right to bring a civil claim. Declaration of Jeremy Harris ¶ 10 |
| 39.    In each instance wherein one of the plaintiffs was disciplined, Chief Coe recommended a lesser degree of discipline than was initially proposed. The disciplinary actions were believed necessary to maintain the integrity of the department, promote good conduct, and to correct perceived errors in judgment. [Coe Declaration, at paras. 3 and 4]. | Disputed.  The discipline was in retaliation for the Plaintiff's involvement in the April 2011 BPOA meeting and subsequent participation in preparing written evaluations of the chief which were forwarded to the City Manager.<br><br>Declaration of Scot Davis. ¶ 6, 7, 8, 17, 22 Declaration of Brian Ford ¶ 9, 12 Declaration of Jeremy Harris ¶11, 12, 13 |
| 40.    Chief Coe did not retaliate against any plaintiff; in fact, he promoted Harris to detective, and then to acting sergeant, after the April 2011 meeting and letter; he approved Davis' post-Arbitration choice of assignment and shift; he promoted the BPOA president, Chris | Disputed.  The discipline was in retaliation for the Plaintiff's involvement in the April 2011 BPOA meeting and subsequent participation in preparing written evaluations of the chief which were forwarded to the City Manager.<br><br>Declaration of Scot Davis. ¶ 6, 7, 8, 17, 22 |

12

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

| | |
|---|---|
| Ramos, from corporal to sergeant after the April 2011 POA meeting and letter. [Coe Declaration, at paras. 3 and 4]. | Declaration of Brian Ford ¶ 9, 12<br>Declaration of Jeremy Harris ¶11, 12, 13 |
| 41.    Since the April 2011 meeting/letter, the department created two additional Sergeant positions and tested in-house. Neither Davis nor Ford competed, but two POA members were promoted from that process; and Harris, who did not promote in that process, has been appointed to an Acting Sergeant position. | Undisputed |
| 42.    The City of Beaumont's grievance process for discipline matters calls for the aggrieved employee to first participate in mediation; then binding arbitration if mediation does not resolve the dispute. Only Cpl. Davis actually carried through the process to its conclusion. [Coe Declaration, at para. 5]. | Disputed. All the Plaintiffs went through the grievance process.  Harris and Ford resolved their discipline prior to arbitration.<br>Declaration of Brian Ford ¶9-11<br>Declaration of Jeremy Harris ¶10 |
| **PLAINTIFF'S STATEMENT OF** | |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| **UNDISPUTED FACTS AND SUPPORTING EVIDENCE** | |
| --- | --- |
| 43.    Scot Davis is currently a police officer with the Beaumont Police Department, holding the rank of Corporal. He began his law enforcement career with the San Bernardino County Sheriff's Department in January 1997.  He was hired by the Beaumont Police Department in October. 2007.<br><br>    Declaration of Scot Davis ¶1 | |
| 44.    When Davis began his employment with the city of Beaumont he became a member of the Beaumont Police Officers Association.  He currently hold the position of President with the BPOA. Since that time he has been very active within the BPOA, even at times when he has not held a board position.<br><br>Declaration of Scot Davis ¶2 | |
| 45.    In or about April 2011 Davis | |

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

| | |
|---|---|
| attended a Beaumont Police Officer Association Board Meeting in which issues were discussed relating to the Chief of Police.  During the meeting Davis raised the fact that he believed that due to the actions of the Chief and the uncertainty in the Department that there should be a vote of no confidence relating to the Chief of Police.  Ultimately the Association decided to do a written evaluation of the Chief.<br><br>    Declaration of Scot Davis ¶3 | |
| 46.    During the April 2011 Association meeting the specific issues Davis raised were the inability of the Chief to promote qualified officers to the position of sergeant because he believed that raised a safety issues for all officers and the Chief's excessive disciplinary action against officers/employees of the department. In addition, the lack of leadership of the Chief of Police and constant policy changes within the | |

15

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| Department.<br><br>Declaration of Scot Davis ¶4 | |
| 47.    The day following the Association meeting Davis arrived at work at 6:00 am.  Immediately after his arrival Chief Frank Coe arrived at the station. Davis found this unusual as Coe never arrived that early. Chief Coe called Davis into his office.  He then proceeded to talk to Davis about issues that had been discussed in the Association meeting the night before.<br><br>Declaration of Scot Davis ¶5 | |
| 48.    During the conversation in the Chief's office, which lasted approximately three hours, Coe stated that Davis would never be promoted at the department.  He then stated that he did not care about the evaluations and for all he cared the Association could put them in the newspaper.  When he stated that he did not care, both his body language | |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

and the manner in which he was speaking, made it clear that he was upset about the fact that the Association was doing the evaluations.

Declaration of Scot Davis ¶6

49.     During the Conversation with Chief Coe in the Chief's office he also stated that Davis would never be a sergeant at the department as long as he was the chief and compared Davis to a meat cutter, telling a story that the city manager tells. Coe also advised Davis it's not good that Davis challenged him, that he is the chief and not Davis.

Declaration of Scot Davis ¶7

50.     Later that same day, Davis was called into Commander Beard's office to discuss the Association meeting from the night before.  This conversation lasted approximately one hour.  During this conversation

Gaspard Castillo Winter Harper
A Professional Corporation

17

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| Commander Beard stated that David would never be promoted at this department and called him a "Rogue" employee, stating that he was responsible for the bad morale at the department. One of the reasons Beard believed Davis would not get promoted to sergeant was that he would be too protective of the officers and promoting me would be awarding bad behavior.<br><br>Declaration of Scot Davis ¶8 | |
| 51.    After the Association meeting in or about April 2013 it became clear that management, particularly Chief Coe, were unhappy with the statements that Davis had made at the Association meeting as well as the statements he had written in the evaluation of the Chief which was compiled in a letter and sent to the City Manager.<br><br>Declaration of Scot Davis ¶9 | |

18

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A Professional Corporation

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

52.    On or about June 6, 2011 Davis was subpoenaed to appear as a witness in a preliminary hearing on or about June 17, 2011.

Declaration of Scot Davis ¶10

53.    On or about June 13, 2011 Davis consulted with Sandra Younger, the subpoena clerk regarding the proper steps to alert the District Attorney that he would not be able to testify at the preliminary hearing on that date because he would be on FMLA leave due to the birth of his child. Davis completed, with the assistant of Ms. Younger, the necessary 1050 form.  This was and still is the normal practice followed by the department when an officer is unable to make a court appearance.  Davis' understanding was that he had completed any and all obligations he had related to the subpoena.

Declaration of Scot Davis ¶11

19

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| 54.    On June 12, 2011 Davis' Daughter was born.  His wife had a difficult time during delivery and needed more assistance than normal with their new baby since she was to be in bed and off her feet for the first week or more.<br><br>Declaration of Scot Davis ¶12 | |
| 55.    On or about June 17, 2011 at approximately 8:35 am, Davis received a call from Sergeant Mark Keyser ordering him to appear at a preliminary hearing that was taking place at the Southwest Superior Court in Murrieta.  At this time Davis was on approved FMLA leave.<br><br>Declaration of Scot Davis ¶13 | |
| 56.    Although Davis was on FMLA leave and was of the understanding that he should not be required to attend the hearing, he nonetheless complied with Sergeant Keyser's orders and appeared at the hearing as | |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

soon as practicable which was approximately 10:20 am.  He sat in the court room until approximately 4:30 when he was released, without ever testifying.  When Davis informed the Judge and the Defense attorney that he was actually on FMLA leave they both stated that he should not be there and continued the hearing until Davis returned from his leave.

Declaration of Scot Davis ¶14

57.    On or about July 13, 2011, Davis was given notice by Defendants that he was being demoted from corporal to officer, removed from my assignment in the detective bureau, and suspended for 40 hours for allegedly being late to court while on FMLA leave. Shortly thereafter, Defendants removed Davis from the detective bureau and stripped him of his Corporal stripes. The 40 hour suspension was imposed as a suspended sentence.

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| Declaration of Scot Davis ¶15 | |
| 58.     Based on information and belief, no other officer in the Beaumont Police Department has been disciplined for being late to court. In actuality, Davis has personal knowledge of many officers who have missed court completely, and on a fairly routine basis have only received discipline in the manner of a written reprimand, and that was after multiple offenses for which there was no viable or valid excuse. Commanders of the department have missed court without excuse and not been subject to any discipline.<br><br>        Declaration of Scot Davis ¶16 | |
| 59.     It appears that the reason for the harsh discipline was a direct result of his statements made in the April 2011 BPOA meeting and his subsequent evaluation of Chief Coe | |

22

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| that was included in the letter to the City Manager.<br><br>Declaration of Scot Davis ¶17 | |
| 60.     On or about August 25, 2011, Davis underwent surgery to repair a torn rotator cuff and ligament in his right shoulder.<br><br>Declaration of Scot Davis ¶18 | |
| 61.     On or about October 24, 2011, Davis returned to work on light duty status. He was assigned to the records department, performing duties normally assigned to civilian employees. This assignment was in direct contravention of Lieutenant Schuler's written directive, dated September 7, 2010, which states that "Police officers on light duty will not be assigned to civilian type duties." Based on information and belief, other sworn Beaumont personnel have not been assigned civilian duties while on light duty. Furthermore, while on light duty, | |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

| | |
|---|---|
| Davis requested that he be allowed to remove his necktie, as it aggravated my injury. His reasonable request was denied without explanation or justification.<br><br>Declaration of Scot Davis ¶19 | |
| 62. Davis filed an administrative appeal, challenging the discipline imposed against him by Defendants. In February 2012, the discipline imposed against him was rescinded by a neutral arbitrator who found that the City "failed to meet its burden of proving each and every charge" against him.<br><br>Declaration of Scot Davis ¶20 | |
| 63. Davis did not choose to return to his assignment in the detective bureau because he would once again have to work under the supervision of Commander Fagan and feared additional retaliation. | |

24

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| Declaration of Scot Davis ¶21 | |
| 64.   Since April 2011, those individuals who participated in completing an unfavorable evaluation of Chief Coe have been subject to extremely harsh discipline and/or terminated.<br><br>    Declaration of Scot Davis ¶22 | |
| | |
| 65.   Brian Ford is a police officer with the Beaumont Police Department.  He began his law enforcement career with the Beaumont Police Department and was hired on March 27, 2008.<br><br>    Declaration of Brian Ford ¶1 | |
| 66.   When Ford began his employment with the city of Beaumont he became a member of the Beaumont Police Officers Association.  Since that time he has been active within the BPOA, even though he has not held a board position. | |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

| | |
|---|---|
| Declaration of Brian Ford ¶2 | |
| 67.    In or about April 2011 Ford attended a Beaumont Police Officer Association Board Meeting in which issues were discussed relating to the Chief of Police.  During the meeting the Association decided to do a written evaluation of the Chief.<br><br>        Declaration of Brian Ford ¶3 | |
| 68.    During the April 2011 Association meeting the specific issues Ford raised were with regards to the Chief's job performance and decision making. He encouraged that the members of the BPOA to write the evaluation of the Chief. Other members discussed recent disciplines which Ford was never a subject of.<br><br>        Declaration of Brian Ford ¶4 | |
| 69.    On or about August 15, 2011, Ford conducted a traffic stop of a | |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

| | |
|---|---|
| citizen. The citizen later drove to the police station to lodge a personnel complaint against him for his handling of the traffic stop.  A police sergeant met with the citizen to handle the complaint and later requested that Ford speak to the citizen.  The sergeant then allowed the citizen to confront him about the incident knowing that the citizen wanted to file a formal complaint.<br><br>    Declaration of Brian Ford ¶5 | |
| 70.    The sergeant who met with the citizen to handle the complaint mishandled the investigation and violated several of Ford's rights under the Public Safety Officers Procedural Bill of Rights Act (POBR).<br><br>    Declaration of Brian Ford ¶6 | |
| 71.    During the investigation, it | |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| was alleged that Ford was discourteous, tampered with the in-car video system, made disparaging remarks about the sergeant regarding the sergeant's violation of the Public Safety Officers Procedural Bill of Rights Act in connection of the complaint against him, and was discourtesy to a police corporal.<br><br>Declaration of Brian Ford ¶7 | |
| 72.    On or about September 30, 2011, Ford was given notice by Defendants that he was being suspended for 30 days as a result of the discourtesy allegations. Defendants subsequently imposed discipline against him.<br><br>Declaration of Brian Ford ¶8 | |
| 73.    On or about October 25, 2011, prior to the imposition of the discipline, Ford attended a *Skelly* | |

28

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER<br>A PROFESSIONAL CORPORATION

hearing with Chief Coe. During that meeting, Coe said Ford's discipline was so severe due to the fact that others that had been challenging his authority, or similar verbiage. Chief Coe said that his decision to reduce Ford's discipline was influenced by his improved "attitude" around the Department.

Declaration of Brian Ford ¶9

74.    Ultimately all of the parties agreed to settle Ford's discipline whereby any discipline would be held in abeyance for one year and only imposed if he had any similar disciplinary issues arise in that one year time.

Declaration of Brian Ford ¶10

75.    As part of the settlement, Ford along with the City agreed not to pursue any additional administrative appeal of his discipline.  Ford did not

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

| | |
|---|---|
| in any way agree that as a result of the settlement he was waiving my right to pursue any type of civil litigation.<br><br>    Declaration of Brian Ford ¶11 | |
| 76.    No other officer in the Beaumont Police Department has ever been disciplined so harshly for such minor allegations of discourtesy and mishandling of traffic stop. The internal investigation was filled with "false information" and completed in a biased manner. The actions taken by Defendants against Ford were based on my statements made in the April 2011 BPOA meeting.<br><br>    Declaration of Brian Ford ¶12 | |
| 77.    Jeremy Harris is currently a police officer with the Beaumont Police Department, holding the rank of Corporal.  He is currently serving as an acting sergeant.  He began his | |

30

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

| | |
|---|---|
| law enforcement career with the Los Angeles Sheriff's Department 2002. He was hired by the Beaumont Police Department in January 2009. He has never been subjected to any formal discipline either while employed for the Beaumont Police Department or my prior department<br><br>Declaration of Jeremy Harris ¶1 | |
| 78.    Harris became a member of the Beaumont Police Officers Association when he began his employment with the City of Beaumont.  Since that time he has been very active within the BPOA, even though he has not held a board position. .<br><br>Declaration of Jeremy Harris ¶2 | |
| 79.    In or about April 2011 Harris attended a Beaumont Police Officer Association Board Meeting in which issues were discussed relating to the Chief of Police.  During the meeting the Association decided to do a written evaluation of the Chief. Harris was active in advocating for | |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

the association to do an evaluation of the Chief. .

   Declaration of Jeremy Harris ¶3

80.   During the April 2011 Association meeting the specific issues Harris raised were related to the constant change within the department and the lack of leadership. .

   Declaration of Jeremy Harris ¶4

81.   In or about April 2011, Harris prepared a written evaluation of

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| Chief Coe which was part of a letter that was sent to the City Manager. Declaration of Jeremy Harris ¶5 | |
| 82.   In or about May 2011 Harris was given the special assignment of Detective. This position is not a promotion.<br><br>Declaration of Jeremy Harris ¶6 | |
| 83.   On or about July 5, 2011, Harris' wife dropped me off at the police station, at which time it was observed that she had window tint on her front passenger windows of her vehicle, a minor infraction under the California Vehicle Code.<br>Declaration of Jeremy Harris ¶7 | |
| 84.   Harris had previously received a memorandum regarding ensuring that Officers vehicle comply with the Vehicle Code, including ensuring that vehicles only had legal window tint and front license plates.  Harris believed that he complied with the directive when he removed window tint from the vehicle that he drove. | |

GASPARD CASTILLO WINTER HARPER<br>A PROFESSIONAL CORPORATION

33

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

GASPARD CASTILLO WINTER HARPER
A PROFESSIONAL CORPORATION

At the time he did not believe that he needed to remove the widow tint from his wife's vehicle because while he was also a registered owner of that vehicle, his wife was the primary driver of the vehicle. Declaration of Jeremy Harris ¶8

85.     On or about July 13, 2011, Harris was given notice by Defendants that he was being demoted from corporal to officer, removed from his assignment in the detective bureau, and suspended for 40 hours for failing to remove the window tint on his wife's vehicle. The discipline was subsequently imposed. However, the suspension was reduced from 40 hours to 36 hours.

    Declaration of Jeremy Harris ¶9

86.     Harris' discipline was reduced as part of a settlement agreement between him and the City.  Part of the settlement agreement prevented him from further administrative

34

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| appeal of my discipline. Nothing in the settlement agreement prevented him from pursuing civil remedies related to my discipline. .<br><br>Declaration of Jeremy Harris ¶10 | |
| 87. No other officer in the Beaumont Police Department has ever been disciplined so harshly for failing to correct such a minor equipment violation on their spouses' vehicle. In fact, Harris observed the vehicles of other officers which were parked at the station that were out of compliance with the vehicle code after the date that he was noticed for discipline.<br><br>Declaration of Jeremy Harris ¶11 | |
| 88. Prior to the April 2011 BPOA meeting officers were not subjected to such extreme levels of discipline for minor infractions. In fact prior to the meeting Harris was disciplined for an off duty incident through "alternative" discipline. This required him to go to each roll call room at the beginning of the shifts and tell them what he had done | |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| wrong.  This "alternative" discipline only was used for him and one other officer.<br><br>Declaration of Jeremy Harris ¶12 | |
| 89.     The actions taken by Defendants against Harris were in retaliation for his activities related to the April 2011 meeting and subsequent evaluation of the Chief. .<br><br>Declaration of Jeremy Harris ¶13 | |

Dated:  November 4, 2013            Respectfully submitted,
                    GASPARD CASTILLO WINTER HARPER, APC


                     /s/ Brandi L. Harper_____
                    Brandi L. Harper
                    Attorney for Plaintiff's,
                    SCOT DAVIS; BRIAN FORD;
                    JEREMY HARRIS

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS